IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 14-cv-01863-CMA

ALLISON ANNE CUTLER,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER AFFIRMING ALJ'S DECISION
DENYING SOCIAL SECURITY BENEFITS**

---

This matter is before the Court on review of the Commissioner's decision to deny Plaintiff Allison Anne Cutler's ("Plaintiff") application for social security disability benefits under Titles II and XVI of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g).

## I.   **BACKGROUND**

In February 2011, Plaintiff applied for disability insurance benefits. Plaintiff was born on November 6, 1978, and was 32 on her alleged disability onset date of February 1, 2010. (AR at 238, 14.)[1] She earned a bachelor's degree in psychology in 2004 and worked in the past as a receptionist and cashier. (AR at 25, 78.) Since 2008, Plaintiff

---

[1] Citations to the Social Security Administrative Record, which is found at Doc. # 11, will be to "AR" followed by the relevant page number.

has also made and sold flower essences on a website she created; although she indicated she made very little money from this business. (AR at 349, 351.)

Plaintiff alleges that she suffers from bipolar disorder II, generalized anxiety disorder, and panic disorder. (AR at 305.)  She testified that she is unable to work full-time due to anxiety and social problems.  (AR at 80–81.)

After her initial application was denied, Plaintiff requested a hearing.  (AR at 14.) Plaintiff appeared and testified at hearings held on August 14, 2012, and November 2, 2012, before an Administrative Law Judge ("ALJ"), who issued an unfavorable decision on November 29, 2012.  (*Id.*)

In applying the five-step sequential evaluation process outlined in 20 C.F.R. § 416.920 to determine whether Plaintiff was disabled, the ALJ determined that:

1. Plaintiff had not engaged in substantial gainful activity since February 1, 2010, the alleged onset date.  [Step 1]
2. Plaintiff had the following severe impairments: personality disorder not otherwise specified.  [Step 2]
3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [Step 3]
4. Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels except the following non-exertional limitations: climbing ladders, scaffolds, and ropes; avoiding all exposure to unprotected height; performing in an assembly-line work; and engaging in

work requiring hyper-vigilance.  Plaintiff is able to frequently interact with the public.  [Step 4]

5. Plaintiff is capable of performing her past relevant work.  [Step 5]

The Appeals Council denied Plaintiff's request for review.  (AR at 1.)  On July 7, 2014, Plaintiff filed her appeal of the Commissioner's final decision.  (Doc. # 1.)  Plaintiff filed her opening brief on November 13, 2014; the Commissioner responded on January 2, 2015, and Plaintiff replied on January 6, 2015.  (Doc. ## 15, 18, 19.)

## II.  **STANDARD OF REVIEW**

This Court's review of the ALJ's determination is limited to determining whether the ALJ's decision is supported by substantial evidence and whether the Commissioner—through the ALJ—applied the correct legal standards.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance.  *Wall*, 561 F.3d at 1084.  In reviewing the record and the arguments of counsel, the Court does not reexamine the issues *de novo*, *Sisco v. United States Department of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993), nor does it re-weigh the evidence or substitute its judgment for that of the Commissioner, *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  Thus, even when some evidence may have supported contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may

have "made a different choice had the matter been before it *de novo.*"  *Oldham v. Astrue*, 509 F.3d 1254, 1257–58 (10th Cir. 2007).

### III. <u>**ANALYSIS**</u>

Plaintiff raises four arguments in support of her contention that the ALJ committed errors in rendering his decision.  The Court will address, in turn, the following contentions: (1) the medical records do not establish Personality Disorder as a medically determinable impairment; (2) the ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence; (3) the ALJ erred in assessing Plaintiff's credibility; and (4) the ALJ erred by finding Plaintiff can perform her past relevant work.

### A. WHETHER THE MEDICAL RECORDS ESTABLISH PERSONALITY DISORDER AS A MEDICALLY DETERMINABLE IMPAIRMENT

Plaintiff argues that the ALJ erred by not including Plaintiff's bipolar II, mood disorder, and Generalized Anxiety Disorder as severe impairments at step two.  (Doc. # 15 at 6.)  Plaintiff contends this is reversible error because it might have impacted the RFC determination.  (*Id.* at 23.)  However, "the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe."  *Dray v. Astrue*, 353 F. App'x 147, 149 (10th Cir. 2009); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (finding harmless error "when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence").  As mentioned, the ALJ found Plaintiff had a severe impairment: personality disorder not otherwise specified.  Thus, Plaintiff's argument regarding step two errors are more

properly addressed at step four. *See Dray*, 353 F. App'x at 149 (addressing the plaintiff's step two arguments as they pertained to the ALJ's RFC finding).

B.     **WHETHER PLAINTIFF'S RFC IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

In her appeal, Plaintiff asserts five arguments in support of her contention that the ALJ committed legal errors and that her decision was not supported by substantial evidence. (Doc. # 15, 9–18.) Specifically, Plaintiff argues that the ALJ erred by: (1) failing to give proper weight to the opinions of Plaintiff's treating sources; (2) failing to give proper weight to the opinions of Plaintiff's other sources; (3) failing to assess Plaintiff's unsuccessful work attempts due to her medical condition; (4) failing to find that Plaintiff could not work frequently with the public; and (5) failing to address Plaintiff's basic work activities. The Court will address these arguments in turn.

1.     **Treating Sources**

According to the "treating physician rule," the Commissioner will generally "give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2). In fact, "[a] treating physician's opinion must be given substantial weight unless good cause is shown to disregard it." *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 289–90 (10th Cir. 1995). A treating physician's opinion is accorded this weight because of the unique perspective he has to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

"In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling weight.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). To do so, the ALJ:

> must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. [. . .] [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Id.* (internal quotation marks and citations omitted).

Even if a treating physician's opinion is not entitled to controlling weight, however, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Id.* Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); 20 C.F.R. § 404.1527(c). Under Tenth Circuit case law, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotation marks and citations omitted).

In the instant case, Plaintiff contends that the ALJ erred in finding that Plaintiff's treating psychiatrist Dr. Shugerman gave only conclusory opinions that Plaintiff is disabled. (Doc. # 17, 9–10.) As the ALJ stated in his written opinion, Dr. Shugerman opined in September and December 2009 and April and October 2010, that Plaintiff's condition "precludes her working in any capacity." (AR 409–10, 412, 414.) The ALJ specified that, "[p]er 20 CFR 404.1527(e)(1) and 20 CFR 416.927(e)(1), conclusory opinions that an individual is 'disabled,' without any explanation of what 'disabled' means, are opinions on an issue that is reserved to the Commissioner of the Social Security Administration." (AR 24.) Although short, this statement complies with the requirement that the ALJ give specific, legitimate reasons for disregarding the treating psychiatrist's opinion, i.e., Dr. Shugerman's opinions were conclusory and not supported by medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987); *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

### 2.     Other Sources

Plaintiff next argues that the ALJ erred in giving no weight to Ms. Tramutt, Ms. McLain, or Ms. Lake.

Ms. Tramutt, MA, is a Licensed Professional Counselor who was Plaintiff's psychotherapist from October 2010 to January 2011. (AR 474.) She opined: "Allison's mental health issues are interfering with her ability to work and support herself, as well as live independently. The anxiety she experiences limits her ability to drive, interact with others, and complete tasks. I do think that given the right circumstances and supports that Allison could work some." (AR 475.) Elizabeth McLain, MA, is a Licensed

Professional Counselor and Certified Senior Addiction Counselor who treated Plaintiff after her hospital discharge in 2012.  (Doc. # 15, 13; AR 625.)  Ms. McLain opined that Plaintiff has marked difficulty in her ability to interact socially, establish interpersonal relationships, and hold a job.  (AR 622–23.)  Jennifer Lake, MA, is a Nurse Practitioner who holds a Master's of Science in Nursing.  (Doc. # 15, 14.)  She treated Plaintiff during the two years she was at Boulder Mental Health Partners.  (*Id.*)  Ms. Lake opined: "When symptomatic Alli has demonstrated unpredictable behavior on the job;" "Alli experiences anxiety when asked to change routine on the job;" and "When depressed Alli has low stamina which effects work production."  (AR 648–49.)

    Social Security Ruling 06–03p provides that "other source" opinions such as those provided by Ms. Tramutt, Ms. McLain, and Ms. Lake should be evaluated in conjunction with "the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion."  Soc. Sec. Rul. 06–03p at *5.

    Without indicating whether he had considered the above factors, the ALJ gave no weight to the opinions of Ms. Tramutt, Ms. McLain, or Ms. Lake because they were "not acceptable medical sources under 20 CFR §§ 404.1513 and 416.913."  (AR 24.)  This determination is deficient because it is unclear whether the ALJ properly considered the above-discussed factors.  *See*, e.g., *Anderson v. Astrue*, 319 Fed. App'x. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an explicit discussion of each

factor, the record must reflect that the ALJ considered every factor in the weight calculation."). However, this error does not constitute reversible error because, as explained infra, Ms. Tramutt and Ms. Lake's opinions are not inconsistent with the conclusions of Dr. Moore, whose opinion the ALJ properly accorded the most weight, and Ms. McLain's opinion conflicted with evidence in the record.

First, Ms. Tramutt's prognosis that "given the right circumstances and supports . . . Allison could work some" is consistent both with the record and with Dr. Moore's opinion. (AR 475.) Ms. Tramutt helped Plaintiff search for jobs and "encouraged her to work on her essential oils business." (AR 472.) Similarly, Ms. Lake's most recent treatment notes were consistent with Dr. Moore's opinion. For example, in 2012, Ms. Lake indicated that Plaintiff's condition was borderline personality disorder, noting she did not exhibit typical bipolar symptoms. (AR 597.) Ms. Lake noted that Plaintiff had been working with an elder in his home for four hours a week for the past five years and indicated that Plaintiff "most likely would benefit greatly from having a successful employment experience." (AR 599.) Lastly, Dr. Moore explained that Ms. McLain had only recently started seeing Plaintiff and that, unlike Ms. McLain, treatment providers who had Plaintiff as a patient over a longer time period "all certainly note personality disorder." (AR 90.) Dr. Moore highlighted evidence in the record pertaining to Plaintiff's social activities and mental health state that conflicted with Ms. McLain's opinions. (AR 94–97.) Thus, the ALJ's decision in giving no weight to Ms. Tramutt, Ms. McLain, or Ms. Lake did not constitute reversible error.

### 3.     Unsuccessful Work Attempts

Plaintiff argues that the ALJ erred when he failed to include, in his RFC assessment, Plaintiff's unsuccessful work attempts due to her medical condition. By way of example, Plaintiff states the ALJ did not consider the instance when Plaintiff was asked to leave her job at a donation center due to her poor performance. The Court notes, however, that Plaintiff lost her job at the donation center because she was reading while she was at work; not because she was unable to interact or get along with others. (AR 493–94.)

The ALJ acknowledged that Plaintiff "work[ed] part-time cleaning houses for pay" (AR 19), "she never lost a job because of problems getting along with people" (AR 21), and that Plaintiff was "doing quite well" consistently volunteering two hours a week and cleaning houses six hours a week (AR 21). The record demonstrates that the ALJ properly considered all of the evidence, even if he did not discuss all of the evidence. That is all that is required. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citing V*incent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984)).

### 4.     Whether the ALJ properly weighed the Mental Health Opinions

Plaintiff argues that the ALJ erred by not including Plaintiff's bipolar II, mood disorder, and Generalized Anxiety Disorder as severe impairments at step two. (Doc. # 15 at 6.) However, the ALJ properly gave the most weight to Dr. Moore (AR 23), who diagnosed Plaintiff with personality disorder (AR 86). The ALJ gave no treating source opinions controlling weight because the treating source opinions were not consistent with the substantial evidence (AR 23), and he gave "some weight" to Dr. Wong, but

more weight to the opinions of the State agency psychological consultant and the Medical Examiner, Dr. Moore (AR 23).

The ALJ is required to weigh every relevant medical opinion he receives using all factors in 20 C.F.R. § 404.1527(c). However, the ALJ is not required to supply a formalistic recitation of all the factors. *Oldman v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). The ALJ did not accord the treating source opinions "controlling weight" because the opinions were "not consistent with the evidence as a whole." *See* 20 C.F.R. § 404.1527(c)(4) (consistency). He placed "some weight" on Dr. Wong's opinion because it was "consistent with treatment notes." (AR 23.) *See* 20 C.F.R. § 404.1527(c)(4) (consistency). Lastly, he accorded Dr. Moore the most weight because she had access to the entire record. (AR 23.) *See* 20 § C.F.R. 404.1527(c)(4) (consistency). The ALJ provided sufficient reasons for the weight he gave to the medical opinions. *See Oldham*, 509 F.3d at 1258.

Plaintiff next contends "it was harmful error for the ALJ to adopt Dr. Moore's opinion." (Doc. # 15, 7.) The ALJ found, however, that Dr. Moore's August 2012 opinion was the most comprehensive and longitudinal opinion of record, was consistent with Plaintiff's course of treatment and daily activities, and was rendered by an acceptable medical source. (AR 21–25.) These explanations as to why more weight is given to an examining physician's opinion are sufficient. *See Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1498 (10th Cir. 1992) (affirming ALJ's decision to give examining physician reports more weight than treating physician's opinion when they were more comprehensive); *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir.

2009) (ALJ reasonably discounted treating physician opinion, which was inconsistent with other medical evidence).

Because the ALJ properly gave Dr. Moore's opinion the most weight, the Court need not discuss Plaintiff's argument that the ALJ erred in finding that Plaintiff could frequently work with the public because Dr. Moore determined Plaintiff could work with the public.  Dr. Moore stated she would give a "moderate" rating to Plaintiff's social issues as Plaintiff's interactions with others are "fairly pleasant . . . engaged."  (AR 88.)  Additionally, Plaintiff at times had been a caregiver and housecleaner, regularly attended outpatient sessions, went to classes, made flower oils, and was "out and about in the community."  (AR 88, 93.)  Dr. Moore testified that Plaintiff was "a bright lady," who has a "relatively higher functioning" and "certainly is capable cognitively."  (AR 86–88.)

Lastly, to the extent Plaintiff argues that that ALJ erred in finding that Plaintiff must avoid climbing ladders, scaffolds, or ropes any such error is harmless as the limitations are beneficial to Plaintiff.

## C. WHETHER THE ALJ ERRED IN ASSESSING PLAINTIFF'S CREDIBILITY

Plaintiff contends that the ALJ erred in his assessment of Plaintiff's credibility.  At the outset, the Court notes that this argument is poorly developed, with no citations to case law and only one citation to SSR 96-8p.  *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those contentions that have been adequately briefed for review."); *Miller v. Astrue*, 496 F. App'x 853, 855 (10th Cir. 2012); *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) ("The scope

of . . . review . . . is limited to the issues the claimant . . . adequately presents on appeal.")  Nonetheless, the Court will address Plaintiff's contentions.

"[C]redibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence."  *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2011) (quoting *Kepler v. Chater*, 68 F.3d 387, 390–91 (10th Cir. 1995)).  Provided the ALJ links his credibility assessment to specific evidence in the record, his determination is entitled to substantial deference.  *Id*. at 910; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (ALJ's decision "must contain specific reasons for the finding on credibility, supported by evidence in the case record").  Because the determination of credibility is left to the ALJ as the finder of fact, that determination is generally binding on a reviewing court.

Plaintiff contends that the ALJ erred because Plaintiff's allegations are "uncontradicted evidence."  (Doc. # 15, 20.)  However, "the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks and citation omitted).  As discussed supra, the ALJ's decision is supported by substantial evidence in the record.  Therefore, the ALJ "clearly and affirmatively linked his adverse determination of [Plaintiff's] credibility to substantial record evidence . . . and [this Court's] limited scope of review precludes [it] from reweighing the evidence or substituting [its] judgment for that of the agency."  *Wall*, 561 F.3d at 1070.

### D.  WHETHER THE ALJ ERRED BY FINDING PLAINTIFF CAN PERFORM HER PAST RELEVANT WORK

Plaintiff argues that the ALJ erred because her past relevant jobs as a cashier and a receptionist were "composite jobs." A "claimant bears the burden of proving his inability to return to his particular former job and to his former occupation as that occupation is generally performed throughout the national economy." *Barker v. Astrue*, 459 F. App'x 732, 741 (10th Cir. 2012) (internal citation and quotation marks omitted). Plaintiff has not shown that she could not perform her past relevant work or shown that her past relevant jobs had significant elements from multiple occupations. In fact, in his decision, the ALJ stated that a vocational expert determined that Plaintiff could perform her past relevant work as a cashier and receptionist as they are generally performed in the national economy, and as they were actually performed by Plaintiff. Nothing in the mental requirements of the job conflict with the RFC findings made by the ALJ.

Plaintiff next alleges that the ALJ failed to make findings concerning the mental demands of Plaintiff's past jobs as a cashier and receptionist.

At step four, the ALJ is to apply a three-phase analysis in determining whether the plaintiff has the ability to return to her past relevant work. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Id.* As discussed supra, there is evidence that Plaintiff is capable of interacting with others. Therefore, the Court finds that the ALJ's step four determination that Plaintiff can perform past relevant work is supported by substantial evidence in the record.

## V. CONCLUSION

For the foregoing reasons, it is ORDERED that the ALJ's decision is AFFIRMED. Each party shall bear its own costs and attorney's fees.

DATED: March __26__, 2015

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge